The Honorable Jo Ellen Carson State Representative P.O. Box 1886 Fort Smith, AR 72902-1886
Dear Representative Carson:
This is in response to your request for an opinion on the following questions regarding Act 474 of 1999, which is entitled "The Arkansas Construction Industry Education Act":
 1. What is the definition of "nonresidential" as the term applies to the collection of the surcharge to financially support the craft training education program in Act 474?
2. When should collection of the surcharge begin?
RESPONSE
In my opinion, the phrase "nonresidential construction permit" should be construed in the context of state law pertaining to the local construction permitting process. When viewed in that context, the term "nonresidential" may, in my opinion, reasonably be interpreted to encompass projects other than those consisting of one (1) to four (4) private residential units.
The act became effective on July 30, 1999, and the surcharge applies to construction permits issued on and after that date.
Question 1: What is the definition of "nonresidential" as the termapplies to the collection of the surcharge to financially support thecraft training education program in Act 474?
The basic rule of statutory construction to which all other interpretive guides must yield is to ascertain and give effect to the intent of the legislature. Thomas v. Cornell, 316 Ark. 366, 872 S.W.2d 370 (1994). In determining legislative intent, each section is read in light of every other section and the object and purposes of the statute are to be considered. Chism v. Phelps, 228 Ark. 936, 311 S.W.2d 297 (1958). Additionally, the rules of statutory construction require that undefined terms be placed beside other statutes relevant to the subject and given a meaning and effect derived from the combined whole. City of Blythevillev. McCormick, 56 Ark.App. 149, 939 S.W.2d 855 (1997). See also, Striblingv. United States, 419 F.2d 1350 (8th Cir. 1969) (where interpretation of particular statute is in doubt, express language of another statute not strictly in pari materia but employing similar language and applying to similar persons and things may control by force of analogy)
The term "nonresidential" is used in Act 474 as follows:
A surcharge in the amount of fifty cents (.50) per each one thousand dollars ($1,000) of construction authorized on any nonresidentialconstruction permit issued by any political subdivision of this state is imposed to financially support the craft training education program.
Acts 1999, No. 474, § 7(a) (emphasis added).
I of course cannot supply a definition of a term that the legislature has left undefined. It appears, however, that the term "nonresidential" in Act 474 is being used in the specific context of the local construction permitting process. Looking to other topical state laws in this regard, I find that the Arkansas Homebuilders Registration Act (A.C.A. §§17-34-101—109) provides in relevant part that:
 Any county or incorporated city or town in Arkansas, at its option, may adopt an ordinance or ordinances requiring a person, upon making application to the building inspector or another authority of any county or incorporated city or town in Arkansas charged with the duty of issuing building or other permits for the construction of any residence, before being entitled to the issuance of those permits, to furnish satisfactory proof to the inspector or authority that the person is registered under the terms of this chapter.
A.C.A. § 17-34-104(a) (Repl. 1995) (emphasis added).
The term "residence" is defined under the Homebuilders Registration Act as "any dwelling, from one (1) to four (4) units in design, intended principally for residential purposes[.]" A.C.A. § 17-34-102(2). One must be registered as a "homebuilder" under this act if he undertakes the construction of a "private residence" on behalf of another, or for himself with the intent to resell the "private residence." A.C.A. §17-34-102(1).
Reference to the Arkansas Contractors Licensing Law also yields some guidance as to the meaning of the term "nonresidential" wherein it provides that:
It shall be unlawful for the building inspector or any other authority to issue or allow the issuance of a building permit unless and until the applicant has furnished evidence that he is either exempt from the provisions of this chapter or is duly licensed under this chapter to carry out or superintend the work for which the permit has been applied.
A.C.A. § 17-25-301(b)(2) (Repl. 1995).
No license is required under the Contractors Licensing Law for the construction of "single-family residences." A.C.A. § 17-25-101(c) (Repl. 1995).[1] The term "single-family residences" has been interpreted by regulation to mean:
 . . . any project consisting of one but not more than four units constructed for residential occupancy[;] any project consisting of five or more units is considered multi-family housing.
Rules and Regulations, Contractors Licensing Board for the State of Arkansas (as amended) at 1.
The interpretive guides noted above lead me to conclude that these laws are the most relevant laws to be applied by analogy in ascertaining legislative intent under Act 474. Particularly significant for purpose of your inquiry is the fact that both of these laws incorporate the concept of a private, individual dwelling (although both laws expand this somewhat to include up to four residential units). It is therefore my opinion that the phrase "nonresidential construction permit" in Act 474 may reasonably be construed to refer to a building permit issued by a local authority for a project other than a "residence" as defined consistent with the above laws, i.e., other than a private dwelling consisting of (1) to four (4) units. Viewed in this context, the term "nonresidential" would, it seems, encompass projects such a those noted in your correspondence that provide sleeping accommodations, i.e., apartments, dorms, and hotels. The surcharge under Act 474 would, in other words, apply to such projects.
As a final note in this regard, I must reiterate that my interpretation of the term "nonresidential" in Act 474 is not controlling. Remaining questions in this regard should be addressed by either the legislature or those charged with administering Act 474, i.e., the Arkansas Department of Workforce Education and the State Apprenticeship Coordination Steering Committee (see § 5 of Act 474), and/or the Chief Fiscal Officer of the State (§ 7 of Act 474).
Question 2:. When should collection of the surcharge begin?
Act 474 contains no emergency clause. It thus became effective on July 30, 1999. See generally Op. Att'y Gen. 99-120 (regarding the effective date of legislation passed in the 82nd General Assembly without an emergency clause or specified effective date). There is no evidence that the Act was intended to apply retroactively. Thus, in my opinion, the surcharge under § 7 should be imposed in connection with permits issued on and after July 30, 1999.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
[1] Section 17-25-101 in the Contractors Licensing Law defines "contractor" and subsection (c) states in full that "[i]t is the intention of this definition to include all improvements or structures, except only single-family residences."